## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Nos. 5:17-cr-00556 / 5:20-cr-00248 |
| | : | |
| JASON WEIGAND | : | |

# O P I N I O N

**Defendant's Partial Motion to Dismiss and/or Strike the Operative Indictment,
ECF No. 80 in 5:17-cr-00556—DENIED**

**The Government's Motion *in Limine* to Admit Evidence of Witness Tampering,
ECF No. 83 in 5:17-cr-00556; ECF No. 9 in 5:20-cr-00248—GRANTED**

**The Government's Motion *in Limine* to Admit Evidence of "JH's" Prior Drug Use,
ECF No. 85 in 5:17-cr-00556; ECF No. 11 in 5:20-cr-00248—
GRANTED, in part, and DENIED, in part**

**Defendant's Motion *in Limine* to Bar Use of Terms Related to State Crimes,
ECF No. 86 in 5:17-cr-00556; ECF No. 12 in 5:20-cr-00248—DENIED**

**Defendant's Motion to Compel Production,
ECF No. 87 in 5:17-cr-00556; ECF No. 13 in 5:20-cr-00248—DENIED**

**Joseph F. Leeson, Jr.**          **April 14, 2021**
**United States District Judge**

## I.    INTRODUCTION

In this consolidated criminal action, Defendant Jason Weigand has been charged with

multiple counts of bank fraud, wire fraud, computer fraud, securities fraud, and identify theft,

stemming from his alleged misappropriation of client funds and related conduct while acting as

a financial advisor.  The operative indictment in the first-filed action, criminal case number

5:17-cr-0056, which charges twenty-four offenses for conduct occurring between 2005 and

2014, has been consolidated with the indictment in the later-filed action, criminal case number

5:20-cr-00248, which charges six offenses for conduct occurring between 2016 and 2019. The consolidated action has been scheduled for trial, and both Defendant and the Government have filed several pre-trial motions. Defendant has filed a motion to partially dismiss and/or strike portions of the operative indictment in case number 5:17-cr-0056, a motion *in limine* to bar the use of certain terms at trial, and a motion to compel the production of certain grand jury materials. The Government has filed three motions *in limine* to admit certain evidence at trial. Each of the parties' motions is opposed. The following Opinion addresses five of the six pending motions.[1]

## II.    FACTUAL & PROCEDURAL BACKGROUND

On October 12, 2017, a grand jury sitting in the Eastern District of Pennsylvania returned a 20-count Indictment against Defendant. *See* ECF No. 1.[2] The Indictment alleged a series of schemes in which Defendant, while acting as a licensed financial advisor, misappropriated the money of several particular clients—"AR," "BG," "WK," "JH," and "RH"—for personal use between 2005 and 2012. *See id*. In particular, the Indictment alleged that Defendant set up accounts without his clients' knowledge and made unauthorized deposits and withdrawals from both authorized and unauthorized accounts. *See id*. As part of these schemes, the Indictment alleged that Defendant frequently forged client signatures on checks, and that in 2012, Defendant stole client AH's identity by impersonating AH when making telephone calls to financial institutions, calls which were captured and recorded by the financial institutions. *See id*. The Indictment further alleged that to conceal his conduct, Defendant

---

[1]    The Government's motion *in limine* to introduce telephone recordings at trial, docketed at ECF No. 84 in 5:17-cr-00556; ECF No. 10 in 5:20-cr-00248, is not addressed in this Opinion and will be addressed separately.

[2]    Unless otherwise noted, reference to a single ECF entry is intended to refer to the docket in the first-filed action, 5:17-cr-00556.

fabricated and provided to his clients false financial statements and engaged in several acts of money laundering.  *See id.*

On October 21, 2017, Defendant made his initial appearance, at which time he was released on bail, subject to conditions that he "have no contact with . . . potential witness[es] in this case," and that he not commit any "Federal, State, or local crime during the period of release." ECF Nos. 5 – 6.

On March 7, 2019, a grand jury sitting in the Eastern District of Pennsylvania returned a 21-count Superseding Indictment against Defendant.  *See* ECF No. 35.  The Superseding Indictment retained all of the charges from the original Indictment and added one additional charge of bank fraud.  *See id.*  The new charge pertained to Defendant's alleged misappropriation of the funds of his client "WP" in 2013 and 2014.  *See id.*

On July 25, 2019, a grand jury sitting in the Eastern District of Pennsylvania returned a 24-count Second Superseding Indictment against Defendant, which remains the operative Indictment in case number 5:17-cr-0056.  *See* ECF No. 44.  The Second Superseding Indictment retains all of the pending charges from the First Superseding Indictment and adds three new bank fraud charges.  *See id.*  The new charges pertain to Defendant's alleged misappropriation of the funds of clients JH and RH in 2013 and 2014.  *See id.*

In March 2019, Defendant contacted JH and RH, in violation of the condition of his release that he "have no contact with . . . potential witness[es] in this case."  Thereafter, the Government filed a motion to revoke Defendant's bail, *see* ECF No. 45, a hearing on which was held on September 19, 2019, *see* ECF No. 57.  The Government's motion to revoke bail was subsequently granted, and Defendant was remanded pending trial.  *See* ECF No. 61.

On August 18, 2020, a grand jury sitting in the Eastern District of Pennsylvania returned a six-count Indictment in case number 5:20-cr-00248, charging Defendant with mail fraud, wire fraud, and interstate transportation of stolen securities, in violation of 18 U.S.C. §§ 1341, 1343, and 2314.  *See* ECF No. 1 in 5:20-cr-00248.  These charges are based on Defendant's alleged misappropriation and misuse of the funds of client "AH."  In particular, the Indictment charges that between June and August 2017, while out on bail in case number 5:17-cr-00556, Defendant induced AH to invest in what he represented to be a profitable and safe investment opportunity, when in reality he misappropriated AH's money for his own personal use.  *See id.*  The Indictment further alleges that Defendant failed to inform AH that he had surrendered his state investment licenses, that he was under state investigation, that he had been federally indicted, and that he was out on bail.  *See id.*

On August 25, 2020, Defendant filed a motion to consolidate the Second Superseding Indictment in case number 5:17-cr-00556 with the Indictment in case number 5:20-cr-00248 for purposes of trial and to continue the trial date due to the COVID-19 pandemic.  *See* ECF No. 71 in 5:17-cr-00556.  After a hearing held on September 16, 2020, the Court granted Defendant's unopposed motion to consolidate and to continue trial in the consolidated matter.  *See* ECF No. 78 in 5:17-cr-00556; ECF No. 7 in 5:20-cr-00248.  Trial in the consolidated matter has been continued two additional times due to the ongoing nature of the COVID-19 pandemic, and is currently scheduled to commence June 28, 2021.  *See* ECF Nos. 95 and 101 in 5:17-cr-00556; ECF Nos. 19 and 27 in 5:20-cr-00248.

III.    **THE PARTIES' SEVERAL MOTIONS**

    A.    **Defendant's Partial Motion to Dismiss and/or Strike**

        *1.    The arguments of the parties*

            a.    **Defendant's arguments**

Defendant raises multiple arguments in its motion to dismiss and/or strike portions of the Second Superseding Indictment in case number 5:17-cr-0056. First, Defendant contends that "the majority of the allegations in Count 1 are time barred," because Count One recites numerous instances of banking activity which occurred outside of the relevant 10-year statute of limitations. Defendant's Motion to Dismiss ("Def. Mot. 1"), ECF No. 80, at 10. Relatedly, Defendant contends that Count One is duplicitous, because it references multiple time-barred allegations of unlawful conduct, and, as a consequence, "there will be a challenge to jury instructions with regard to the execution element." *Id*. Defendant moreover contends that Counts Two and Three are multiplicitous, because, "as a whole, these two Counts combined with Count 1 for three executions of basically the same scheme." *Id*. at 11. Finally, Defendant argues that "[t]he First Superceding [sic] Indictment and the Second Superceding [sic] Indictment considerably broadened the 'bank fraud' allegations against Mr. Weigand as originally set forth in Count 1," *id*. at 13, and as such, for statute of limitations purposes "the government does not enjoy the benefit of the filing date of the original indictment," *id*. at 14.

            b.    **The Government's arguments**

In opposition, the Government argues that Defendant's "entire motion is founded on a fundamental misconception of the law governing statutes of limitation." Government's Opposition to Defendant's Motion to Dismiss ("Gov't. Opp'n. 1"), ECF No. 82, at 5. The Government observes that "Count One [of the Second Superseding Indictment] charges a single

execution of a bank fraud scheme premised on Weigand's presentation and deposit of false, fraudulent, and forged checks to Wells Fargo Bank." *Id*. at 8.  This scheme took place from "on or about June 24, 2005 through on or about November 1, 2007." *Id*. at 6.  November 1, 2007, was the date of the final alleged execution of the scheme—that is, when Defendant allegedly deposited forged check number 1021 in the amount of $370, drawn on the Fidelity account that Defendant had opened in his client BG's name, into a Wells Fargo Bank account of Defendant's own entity.[3] *Id*. at 9.  The Government contends that because at least one of the alleged executions of the bank fraud scheme occurred within ten years of the date of filing of the initial Indictment—October 12, 2017—the scheme as charged in Count One has been timely brought. *Id*.  "The fact that much of the conduct alleged in [Count One], and that will be proved at trial, antedates the limitations period is irrelevant because that conduct is part of the charged scheme and will be used to prove its existence and Weigand's intent." *Id*. at 13.

The Government also contends that the only change between the initial Indictment and the superseding Indictments "is the addition of the description of a bank that is neither implicated nor otherwise mentioned in Count One" as initially charged, and as such, Defendant "was on notice and [ ] Count One is not materially broader or substantially amended" in the superseding Indictments. *Id*. at 10.

Lastly, the Government contends that Count One is not duplicitous, as only a single execution of the bank fraud scheme falls within the limitations period, *see id*. at 14; and that Counts One, Two, and Three of the Second Superseding Indictment are not multiplicitous:

---

[3]     The Government's Opposition Memorandum and the Second Superseding Indictment state dates of both November 1, 2007, as well as November 2, 2007, for what appears to be the same act. *See, e.g.*, Gov't. Opp'n. 1 at 6, 8, 9-11; ECF No. 44, Count One ¶¶ 12, 45, 50.  For reasons discussed further below, this apparent discrepancy is not material.

"[E]ach deposit of a worthless check constitutes a separate execution of a bank fraud scheme, and that the bank fraud statute 'plainly and unambiguously' allows each such execution to be individually charged as a separate crime," *id*. at 15.

### 2.    *Legal framework*

Defendant's primary challenge to the Second Superseding Indictment is founded on the 10-year statute of limitations applicable to bank fraud.[4]  Such a challenge may be properly brought by way of a pre-trial motion to dismiss under Federal Rule of Criminal Procedure 12(b).[5]  *See, e.g.*, *United States v. Smukler*, 330 F. Supp. 3d 1050, 1054 (E.D. Pa. 2018).  Where a defendant raises a statute of limitations defense, the Government bears the burden of showing that an offense was timely charged.  *See Smith v. United States*, 568 U.S. 106, 113 (2013).  While this is a showing that can be made prior to trial in response to a motion to dismiss, "in non-obvious cases, the statute of limitations is best addressed at trial and not before, because 'determination of when the crime has been committed for statute of limitation purposes . . . is

---

[4]    The parties do not dispute that the applicable limitations period for bank fraud is ten years.  *See* 18 U.S.C. § 3293.

[5]    Rule 12(b) provides that certain defenses, objections, and requests "may [be] raise[d] by pretrial motions," FED. R. CRIM. P. 12(b)(1), and others "must be raised by pretrial motion," FED. R. CRIM. P. 12(b)(3).  With regard to a motion to dismiss challenging an indictment on statute of limitations grounds, one court from this Circuit has noted the following:

> The propriety of raising the statute of limitations on a motion to dismiss the indictment has been recently called into question. An older version of Federal Rule of Criminal Procedure 12(b) explicitly included statute-of-limitations defenses as permissible grounds for a motion under the rule. *See United States v. Grimmett,* 150 F.3d 958, 961-62 (8th Cir. 1998). However, statute of limitations defenses were recently removed from the rule's nonexclusive list of permissible grounds for a 12(b) motion, in order "to permit further debate over the treatment of such claims."

*United States v. Schueg*, No. 1:14-CR-00070, 2015 WL 5311435, at *1 n.1 (M.D. Pa. Sept. 11, 2015).  By contrast, motions to dismiss alleging improper duplicity (joining two or more offenses in the same count) or multiplicity (charging the same offense in more than one count) explicitly "must" be brought by pretrial motion under Rule 12(b)(3)(B).

ordinarily a question of fact for the jury.'" *United States v. Schueg*, No. 1:14-CR-00070, 2015 WL 5311435, at *2 (M.D. Pa. Sept. 11, 2015) (quoting *United States v. Oliva*, 46 F.3d 321, 324-25 (3d Cir. 1995)). Where a defendant brings a pre-trial motion to dismiss on statute of limitations grounds, "a district court must accept as true the factual allegations set forth in the indictment" to determine whether a jury could find that the defendant committed the offense for which he was charged within the limitations period. *Smukler*, 330 F. Supp. 3d at 1054 (quoting *United States v. Huet*, 665 F.3d 588, 595-96 (3d Cir. 2012)). Where an initial indictment is timely and validly returned, superseding indictments are not barred by the statute of limitations so long as they do not substantially expand the charged offenses. *See United States v. Friedman*, 649 F.2d 199, 204 (3d Cir. 1981).

Count One of the Second Superseding Indictment charges bank fraud. The bank fraud statute makes it an offense to "knowingly execute[ ], or attempt[ ] to execute, a scheme or artifice -- (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344. The offense of bank fraud is complete, and the statute of limitations begins to run, when the scheme is or is attempted to be "executed"; described differently, the offense of bank fraud is timely charged if the scheme to defraud is "executed" (or attempted to be executed) within the 10-year limitations period. *See United States v. De La Mata*, 266 F.3d 1275, 1287 (11th Cir. 2001); *United States v. Longfellow*, 43 F.3d 318, 322 (7th Cir. 1994). As relevant here, where an indictment charges a bank fraud scheme premised on multiple deposits at a financial institution, the Third Circuit has found that each deposit is an execution of the

scheme.[6]  *See United States v. Schwartz*, 899 F.2d 243, 248 (3d Cir. 1990) ("It seems to us that each deposit was a separate violation of 18 U.S.C. § 1344(a)(1), because in making each deposit [defendant] was executing his scheme to defraud Philadelphia National. As the Court of Appeals for the Ninth Circuit indicated in *United States v. Poliak,* 823 F.2d 371, 372 (9th Cir. 1987), 18 U.S.C. § 1344(a) 'plainly and unambiguously allows charging each execution of the scheme to defraud as a separate act.'").  *See also United States v. Sirang*, 70 F.3d 588, 596 (11th Cir. 1995) (observing that "[i]n check-kiting cases, separate checks have been considered separate executions of the scheme," and collecting cases).

### 3.    *Analysis*

The allegations contained in the Second Superseding Indictment with regard to Count One make clear that the bank fraud offense in that Count was timely charged.  In particular, Count One of the Second Superseding Indictment charges that on six occasions, Defendant presented and deposited false, fraudulent, and forged checks to Wells Fargo Bank that had been written on an account in BG's name, but which contained AR's money.  *See* Second Superseding Indictment, ECF No. 44, Count One ¶ 50.  The last of these forged checks, in an

---

6       As one court explained,

> [t]he scope of activity constituting an execution of a bank fraud scheme depends on the facts of the particular case. *United States v. Longfellow*, 43 F.3d 318, 323 (7th Cir. 1995). A single execution includes acts that are chronologically and substantively dependent, such as acts that depend on each other for its existence and are interrelated by function and purpose. *Id.; see also United States v. Sain,* 141 F.3d 463, 473 (3d Cir.1998). Factors to be considered in determining what parts of a scheme are executions are "the ultimate goal of the scheme, the nature of the scheme, the benefits intended, the interdependence of the acts, the number of parties involved." *Longfellow,* 43 F.3d at 323. Also relevant is whether the activity created a new and independent financial risk to the bank. *Id.* at 325; *United States v. Anderson,* 188 F.3d 886, 889 (7th Cir.1999).

*United States v. Budilov*, No. CRIM.A. 03-513-1, 2004 WL 1238389, at *2 (E.D. Pa. Apr. 30, 2004).

amount of $370, was deposited at Wells Fargo on or about November 1, 2007.[7]  *See id.* ¶¶ 12, 45, 50; *see also* initial Indictment, ECF No. 1, ¶¶ 11, 44, 49.  The initial Indictment was returned on October 12, 2017.  *See* ECF No. 1.  Because at least one execution of the alleged bank fraud scheme—the November 1, 2007 deposit of a forged check in the amount of $370— occurred within ten years preceding the return of the initial Indictment, and therefore within the 10-year limitations period, Count One was timely charged.[8]  Defendant's motion to dismiss Count One of the Second Superseding Indictment based on the statute of limitations is therefore without merit and denied.[9]

Defendant's related objection, the inclusion of allegations in Count One and Counts Four through Twenty pertaining to conduct which occurred outside of the relevant limitations period, is similarly without merit.  "A statute of limitations does not operate to bar the introduction of evidence that predates the commencement of the limitations period but that is relevant to events during the period."  *Fitzgerald v. Henderson*, 251 F.3d 345, 365 (2d Cir. 2001).  Indeed, conduct "that fall[s] outside the statute of limitations can be considered as evidence to prove [a] fraud that [occurred] within the statute of limitations."  *United States v. James*, 955 F.3d 336, 342 (3d Cir. 2020) (quoting *United States v. Pharis*, 298 F.3d 228, 234 n.3 (3d Cir. 2002) (en banc), *as amended* (Sept. 30, 2002)), *cert. denied*, 141 S. Ct. 329 (2020).

---

[7]   The Court notes that language in the Second Superseding Indictment that charges the last execution of the scheme to have occurred "on or about" November 1, 2007, *see* ECF No. 44, Count One ¶¶ 12, 45, is not per se improper.  *See United States v. Franz*, 772 F.3d 134, 156 n.24 (3d Cir. 2014).

[8]   Indeed, as the Government points out, Defendant *concedes* that the last alleged execution of the scheme occurred within the limitations period:  "Paragraphs 8 through 15 and all of paragraph 50, *except for a check in the amount of $370*, as well as paragraphs 46 to 49 of Count 1 of the Indictment alleging bank fraud recite numerous bank deposits or activities outside the 10 year limitations period."  Def. Mot. 1 at 10 (emphasis added).

[9]   This denial is without prejudice.  If the Government fails to present evidence at trial that at least one of the executions occurred within the limitations period, the issue may be reasserted.

There is thus nothing improper about the Second Superseding Indictment's inclusion of allegations of Defendant's conduct that predate the applicable limitations period.

Nor are there any problems with duplicity or multiplicity in the Second Superseding Indictment as argued by Defendant. "Duplicity is the improper joining of distinct and separate offenses in a single count [of an indictment]." *United States v. Haddy,* 134 F.3d 542, 548 (3d Cir. 1998). To determine whether a count is duplicitous, a court must "focus on the 'allowable unit of prosecution' to decide whether the indictment properly charges a violation of the relevant statute." *United States v. Steiner*, 847 F.3d 103, 115 (3d Cir. 2017). "The appropriate unit of prosecution for a charge brought under 18 U.S.C. § 1344 is each execution of the bank fraud scheme." *United States v. Budilov*, No. CRIM.A. 03-513-1, 2004 WL 1238389, at *2 (E.D. Pa. Apr. 30, 2004). Although Count One lists six acts in furtherance of a bank fraud scheme—*i.e*., Defendant's deposit of six fraudulent checks at Wells Fargo—because only the last act, the deposit of the $370 check at Wells Fargo on November 1, 2007, falls within the limitations period, this is the only execution that Count One is capable of charging. With only one potential execution in Count One, any concern of duplicity necessarily disappears.

"Multiplicity is the charging of a single offense in separate counts of an indictment." *United States v. Kennedy*, 682 F.3d 244, 254 (3d Cir. 2012). "[T]he test for multiplicity examines 'whether the legislature intended to make separately punishable the different types of conduct referred to in the various counts.'" *Id*. at 255 (quoting *United States v. Stanfa,* 685 F.2d 85, 87 (3d Cir. 1982)). As with duplicity, a court addressing a challenge premised on multiplicity must focus on a statute's "unit of prosecution." *Id.* Here, Counts One, Two, and Three each charge separate bank fraud schemes: Count One charges execution of a bank fraud scheme stemming from Defendant's conversion of AR's funds by way of presentation and

deposit of six forged checks at Wells Fargo that had been written on a Fidelity account in BG's name but which contained AR's money; Count Two charges execution of a bank fraud scheme stemming from Defendant's conversion of AR's funds by way of presentation and deposit of thirteen forged checks at Wells Fargo that had been written on a T. Rowe Price account in AR's name; and Count Three charges execution of a bank fraud scheme stemming from conversion of the same cache of funds held in the T. Rowe Price account that are implicated in Count Two, however by way of a different series of forged checks presented to a different financial institution, Fulton Bank. *See generally* Second Superseding Indictment. Because each separate scheme is itself based on separate and distinct executions—*i.e.*, the deposit of the individual forged checks, *see Schwartz*, 899 F.2d at 248; *Sirang*, 70 F.3d 588, 596—and because each execution is a violation of the statute, the schemes as charged in Counts One through Three are not improper. These Counts are not multiplicitous.[10]

Finally, there is no merit to Defendant's argument that the Government is not entitled to the filing date of the initial Indictment for statute of limitations purposes because "[t]he First Superceding [sic] Indictment and the Second Superceding [sic] Indictment considerably broadened the 'bank fraud' allegations against Mr. Weigand as originally set forth in Count 1." Def. Mot. 1 at 13. "The Circuits agree that a superseding or new indictment does not materially broaden or substantially amend original charges if the first indictment provided fair notice of the new charges." *United States v. Kuper*, No. 05-167-3, 2009 WL 1119490, at *2 (E.D. Pa. Apr. 27, 2009). As the Government points out, the only change made to Count One in the Second

---

[10]    Indeed, charging these schemes in a single count would likely be problematic. *Compare United States v. Hinton*, 127 F. Supp. 2d 548, 556 (D.N.J. 2000) ("The vice here is not that multiple transactions are involved in the scheme against a particular institution, but that schemes against six separate unrelated financial institutions are lumped into a single count contrary to the language of § 1344.").

Superseding Indictment was the addition of paragraph 7, which identified Bank of America as a financial institution the deposits of which are insured by the FDIC.  Count One in the Second Superseding Indictment is otherwise identical to Count One in the previous Indictments.  This cosmetic addition did not act to substantially amend the charge in Count One.  Rather, the charge is effectively identical to previous iterations, and Defendant cannot be said to have lacked fair notice of the charge.  *See United States v. Fuhai Li*, No. 3:16-CR-00194, 2018 WL 1299724, at *9 (M.D. Pa. Mar. 13, 2018) (collecting cases).

### 4.    *Conclusion*

Defendant's several arguments regarding the timeliness and propriety of the offenses as charged in Counts One through Three of the Second Superseding Indictment are without merit. Defendant's motion to dismiss these charges is therefore denied, without prejudice.[11]  The Court moreover denies Defendant's request to strike from the Second Superseding Indictment reference to alleged conduct predating the 10-year limitations period for bank fraud as charged in Count One.

### B.    The Government's Motion *in Limine* to Admit Evidence of Witness Tampering

#### 1.    *The arguments of the parties*

##### a.    The Government's arguments

In its first motion *in limine*, the Government seeks to introduce evidence at trial of Defendant's alleged witness tampering in 2019—in particular, his contacting of witnesses JH and RH in or around March 2019.  *See* Government's First Motion *in Limine* ("Gov't. Mot. 1"),

---

[11]    As the Court noted previously, if the Government fails to introduce evidence at trial that at least one execution occurred within the limitations period, the issue may be reasserted.

ECF No. 83, at 3.[12]  According to the Government, "[b]oth [RH and JH] were identified as

potential witnesses and victims in the original indictment." *Id*. at 8.  The Government states

that in March 2019, Defendant contacted JH by calling his cell phone, "[d]uring their

conversation, JH informed Weigand that Postal Inspectors had contacted JH about the

investigation of Weigand," "Weigand told JH that the investigators were on a witch hunt, and

that JH did not have to speak with investigators," and "Weigand [ ] represented that he could

help JH find a well-paying job." *Id*. at 3, 8.  The Government states that around this time,

Defendant also initiated a set of text message exchanges with RH.  *Id*. a 2.  As of March 2019,

the Government had, in addition to referencing RH as a potential witness in the original

indictment, even provided Defendant with a memorandum of RH's interview through

discovery, therefore placing Defendant on notice that RH was a potential witness.  *Id*. at 2-3.

The Government seeks to introduce evidence of these communications under Federal Rule of

Evidence 404(b)(2), as evidence of Defendant's consciousness of guilt.  *See id*. at 7-11.

### b.       Defendant's arguments

In opposition, Defendant contends that the purported communications between he and

JH and RH did not convey any threat or bribe, and therefore are not properly cognizable as

witness tampering.  *See* Defendant's Opposition to the Government's First Motion *in Limine*

("Def. Opp'n. 1"), ECF No. 88, at 1.  Defendant also argues that the Government's request, by

way of a separate motion, to limit evidence of JH's prior drug use, undercuts its motion to admit

evidence of attempted witness tampering:  "The government cannot have it both ways. They

advocate that a phone call in March 2019, months prior to any charges involving JH or RH is

---

[12]       Where motions are filed in both criminal case number 5:17-cr-0056, as well as criminal
case number 5:20-cr-00248, the Court limits its reference from this point in the Opinion forward
to the docket of the first-filed action, 5:17-cr-0056.

attempted witness tampering, but when it comes to JH's drug problems it wants that questioning limited to the one month of the alleged scheme involving JH, five years prior . . . ." *Id*. at 2. Finally, Defendant argues that the proffered evidence does not satisfy the standard for admission under Rule 404(b)(2), because (1) "[t]he proposed 404(b) evidence provides an impermissible inferential element of the instant offense, (i.e. because defendant called JH or texted RH then he knew he defrauded them), violating a tenet forbidding the use of Fed. R. Evid. 404(b)—such evidence cannot be used to prove conduct in conformity therewith," *id*. at 5; (2) "the proffered evidence of attempted witness tampering does not relate to any of the elements of the indicted counts," *id*. at 6; and (3) the potential for "unfair prejudice far outweighs any possible probative value," *id*. at 7.

### 2.    *Legal framework*

Rule 404(b)(1) of the Federal Rules of Evidence provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  FED. R. EVID. 404(b)(1). Rule 404(b)(2) in turn provides that "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  FED. R. EVID. 404(b)(2).  Rule 404(b) "is a rule of general exclusion."  *United States v. Repak*, 852 F.3d 230, 240 (3d Cir. 2017) (quoting *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014)).  "That is, 'Rule 404(b) directs that evidence of prior bad acts be excluded—*unless* the proponent can demonstrate that the evidence is admissible for a non-propensity purpose."  *Id*. (quoting *Caldwell*, 760 F.3d at 276).  A court ruling on a motion to admit Rule 404(b) other-acts evidence must engage in a multi-part inquiry:  (1) the other-acts evidence must be proffered for a non-propensity purpose; (2) that

evidence must be relevant to the identified non-propensity purpose; (3) its probative value must not be substantially outweighed by its potential for causing unfair prejudice to the defendant; and (4) if requested, the other-acts evidence must be accompanied by a limiting instruction. *Id.* at 241 (citing *Huddleston v. United States*, 485 U.S. 681, 691 (1988)).

### 3.   *Analysis*

The Government offers evidence of Defendant's communications with JH and RH for the non-propensity purpose of showing Defendant's consciousness of his own guilt of the underlying charges. "[C]onsciousness of [ ] guilt of the underlying charges, [ ]is a proper purpose under Rule 404(b)." *United States v. Ponder*, No. 4:16-CR-0056, 2017 WL 2588837, at *3 (M.D. Pa. June 14, 2017) (quoting *United States v. Kemp*, 500 F.3d 257, 296 (3d Cir. 2007)). The Government has therefore satisfied its initial burden of showing that the other-acts evidence it wishes to introduce at trial is being proffered for a non-propensity purpose.[13]

Turning to whether evidence of Defendant's communications to JH and RH is relevant to the issue of Defendant's consciousness of his own guilt, generally "[e]vidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence." FED. R. EVID. 401. Similarly, in the context of Rule 404(b), "[t]o be relevant, proffered

---

[13]     Defendant's argument as to this part of the inquiry—*i.e.*, that the proposed Rule 404(b) evidence "provides an impermissible inferential element of the instant offense . . . such evidence cannot be used to prove conduct in conformity therewith," Def. Opp'n. 1 at 5—misapprehends Rule 404(b). Evidence that is admitted for a proper purpose, such as showing consciousness of guilt, or "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," FED. R. EVID. 404(b)(2), is not being introduced to show conduct in conformity with a particular character trait. The "inferential element of the instant offense" which Defendant objects to—Defendant's awareness of his guilt, under the Government's theory—is therefore not "impermissible" as Defendant contends. *See United States v. Krauss*, No. CIV.A. 06-4239, 2009 WL 1313296, at *5 (E.D. Pa. May 11, 2009) (explaining that "the law is clear that a defendant's attempts to threaten or intimidate a witness may be introduced without running afoul of Rule 404(b) because such attempts reflect consciousness of guilt," and collecting cases).

evidence must fit into 'a chain of inferences—a chain that connects the evidence to a proper

purpose, no link of which is a forbidden propensity inference.'" *Repak*, 852 F.3d at 243

(quoting *United States v. Davis*, 726 F.3d 434, 442 (3d Cir. 2013)).  Additionally, "[t]he

proponent must [ ] show that the proffered evidence would allow a 'jury [to] reasonably

conclude that the [prior] act occurred and that the defendant was the actor.'" *United States v.

Foster*, 891 F.3d 93, 108 (3d Cir. 2018) (quoting *Huddleston*, 485 U.S. at 689).

Here, the Government has satisfied its burden:  it has laid out a logical chain of

inferences connecting Defendant's communications with JH and RH and a non-propensity

purpose.  In spite of having as a condition of his bail a prohibition on communicating with

potential witnesses—which JH and RH were identified as being in the initial Indictment—

Defendant text messaged RH and telephoned JH.  With regard to JH in particular, Defendant's

statements that JH did not have to speak with investigators, that the investigation into him

(Defendant) was a "witch hunt," and that he could help JH find a well-paying job, when viewed

together have a tendency to make it more likely that Defendant was conscious that he had

defrauded these and/or other individuals and was attempting to cover his tracks.[14]  Finally, there

is no connection between offering this evidence to show Defendant's guilty mind and offering

this evidence to show that Defendant has a propensity to behave in a manner consistent with

certain character traits.  *See, e.g.*, *United States v. Lacerda*, No. CRIM. 12-303, 2013 WL

---

[14]     It is noteworthy that the Court has already determined by clear and convincing evidence
that Defendant violated the conditions of his bail in communicating with JH and RH, and that
there was probable cause to believe that Defendant had committed the offense of attempted
witness tampering.  There is thus further reason to find that the "reliability" component that is
part of the Rule 404(b) "relevance" inquiry has been satisfied.  *See Foster*, 891 F.3d at 108
("The proponent must [ ] show that the proffered evidence would allow a 'jury [to] reasonably
conclude that the [prior] act occurred and that the defendant was the actor.'" (internal citation
omitted)).

4446945, at *3 (D.N.J. Aug. 16, 2013) ("Here, the evidence is relevant because Defendants'
subsequent contacts with potential victims and witnesses to offer them a refund in exchange for
a release from pursuing litigation against VO Financial makes it more probable than not that
Defendants defrauded these individuals in the first place. Moreover, the witness contacts are not
being offered to show that the Defendants acted in conformity with a particular character trait,
but rather as evidence that the Defendants subsequently attempted to pick up the crumbs of the
trail left behind by their allegedly fraudulent scheme.").

The Rule 404(b) inquiry's "third step requires that other-acts evidence must not give rise
to a danger of unfair prejudice that substantially outweighs the probative value of the evidence
under Rule 403 of the Federal Rules of Evidence." *Repak*, 852 F.3d at 246. Rule 403, which
provides that "[t]he court may exclude relevant evidence if its probative value is substantially
outweighed by a danger of . . . unfair prejudice," FED. R. EVID. 403, "creates a presumption of
admissibility," *United States v. Claxton*, 766 F.3d 280, 302 (3d Cir. 2014). "Evidence cannot be
excluded under Rule 403 merely because its unfairly prejudicial effect is greater than its
probative value. Rather, evidence can be kept out only if its unfairly prejudicial effect
'substantially outweigh[s]' its probative value." *Repak*, 852 F.3d at 246 (quoting *United States
v. Cross*, 308 F.3d 308, 323 (3d Cir. 2002)).

Here, the Court agrees with the Government that in light of the probative value of the
evidence of Defendant's communications with JH and RH to show consciousness of guilt, it is
not the case that any potential prejudicial effect "substantially outweighs" this probative value.
*See Lacerda*, 2013 WL 4446945, at * 6 ("Absent undue prejudice that substantially outweighs
the probative value of the evidence, Rule 403 'does not generally require the government to
sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone.'" (quoting

*Cross*, 308 F.3d at 325)).  Additionally, a limiting instruction may be requested at trial to further reduce the possibility of any undue prejudice.

### 4.   *Conclusion*

For the reasons set forth above, the Government's motion *in limine* to admit evidence of Defendant's communications in March 2019 with RH and JH under Federal Rule of Evidence 404(b) is granted.  Should Defendant make such a request at trial, such evidence will be admitted subject to a jury instruction requiring this evidence to be considered only as proof of Defendant's consciousness of guilt, and not as evidence of his propensity to conduct himself in conformity with any given character trait.

### C.   The Government's Motion *in Limine* to Limit Evidence of JH's Prior Drug Use

### 1.   *The arguments of the parties*

In its second motion *in limine*, the Government seeks to limit testimony of "JH" pertaining to his drug use.  *See* Government's Second Motion *in Limine* ("Gov't. Mot. 2"), ECF No. 85.  In particular, the Government seeks to limit any cross-examination of JH regarding his drug use to (1) the period of December 2013 and January 2014—the time period of JH's involvement in the relevant scheme as charged in the Second Superseding Indictment—and then limited to his ability to recall details of the scheme, and (2) the time of trial if there is a good faith basis to believe that that JH is using drugs such that it would affect his ability to testify lucidly.  *See id.*

In opposition, Defendant primarily argues that the Government "cannot have it both ways"—that is, because the Government seeks to admit evidence regarding Defendant's alleged "tampering" of JH as a potential witness in March 2019, it cannot exclude cross-examination of JH's potential drug use during this period.  *See* Defendant's Opposition to the Government's

Second Motion *in Limine* ("Def. Opp'n. 2"), ECF No. 92.  Indeed, Defendant argues that cross-examination of JH, "a long term addict," should be permitted regarding "any of the periods he will testify about, which includes his being a client of defendant from 2008 to 2014 or 2015 according to the Second Superceding [sic] Indictment."  *Id*. at 2.

### 2. *Legal framework*

As a general matter, "evidence relating to drug use is not probative of truthfulness or untruthfulness."[15]  *Dover-Hymon v. Southland Corp.*, No. CIV. A. 91-1246, 1993 WL 419705, at *6 (E.D. Pa. Sept. 27, 1993); *United States v. Sellers*, 906 F.2d 597, 602 (11th Cir. 1990) ("[P]rior instances of drug use are not relevant to truthfulness for purposes of Fed.R.Evid. 608(b).").  Two exceptions to this rule—neither of which the parties here appear to dispute—are:  (1) "when the drug use occurred while the witness was in a cooperative relationship with the Government *and* the Government was contemplating prosecution for that use or at least was aware of the drug use"; and (2) "when the drug use occurred during 'relevant periods of trial and the transaction charged in the indictment,' thereby affecting the witness' ability to perceive the underlying events and to testify lucidly at trial."  *United States v. Bertoli*, 854 F. Supp. 975, 1088 (D.N.J. 1994) (emphasis in original) (quoting *Sellers*, 906 F.2d at 602), *aff'd in part*, *vacated in part*, 40 F.3d 1384 (3d Cir. 1994); *Jarrett v. United States,* 822 F.2d 1438, 1446 (7th Cir. 1987) ("A witness's use of drugs may not be used to attack his or her general credibility, but only his or her ability to perceive the underlying events and testify lucidly at the trial.").

---

[15]     "Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of: (1) the witness; or (2) another witness whose character the witness being cross-examined has testified about." FED. R. EVID. 608(b).

### 3.      *Analysis*

Here, the Court finds that upon the showing of the parties at present, it would not be proper to allow Defendant carte blanche to cross-examine JH as to his drug history—that is, to permit questioning that is unbounded in time.  However, the Court also finds that it would be improper to restrict questioning of JH regarding his drug use to only December 2013 and January 2014.  Because the Government will be permitted to introduce evidence of Defendant's attempted witness tampering related to his communications with JH and RH around March 2019, Defendant shall be permitted to question JH about any drug use that occurred during this time period.  Defendant shall also be permitted to question JH about any drug use occurring at the time of trial, *if* defense counsel can make a detailed offer of proof outside the presence of the jury to show a good faith belief that JH is using drugs at that time.  These determinations are without prejudice to Defendant's ability at the time of trial to seek an expansion of the scope of time within which JH's drug use may be relevant.  Finally, the Government may propose and the Court will consider an appropriate limiting jury instruction.

### 4.      *Conclusion*

For the reasons set forth above, the Government's motion *in limine* to limit testimony by JH of his prior drug use is granted, in part, and denied, in part, without prejudice pursuant to the directives set forth herein.

### D.      Defendant's Motion *in Limine* to Bar Use of Terms Related to State Crimes

### 1.      *The arguments of the parties*

In his motion *in limine*, Defendant moves "to bar the government from mention of the words 'forgery' or 'forged'; 'embezzled' or 'embezzlement'; and 'theft' during the pendency of this case."  Defendants' Motion *in Limine* ("Def. Mot. 2"), ECF No. 86, at 1.  Defense counsel

states that "Mr. Weigand is not charged with forgery, nor is he charged with embezzlement or theft. These are state crimes for which there is no jurisdiction in federal court." *Id*. Defendant also asks that "the Second Superceding [sic] Indictment [ ] not be given to the jury for their use in deliberations." *Id*. at 3.

The Government opposes the Defendant's requests, arguing that "[f]orgery, embezzlement, and theft are not only technical legal terms for state and federal crimes, but they are also ordinary English words describing particular kinds of conduct." Government's Opposition to Defendant's Motion *in Limine* ("Gov't. Opp'n. 2"), ECF No. 89, at 3. The Government asserts that "English language and literature are filled with examples of the use of these words outside of their technical legal descriptions," and "[a]s such, any modestly discerning reader of the second superseding indictment would understand that these words were used not to identify charged offenses, but as short-hand descriptions of Weigand's fraudulent conduct."[16] *Id*. at 4. According to the Government, courts routinely use such language in describing alleged offenses. *See id*. at 5-7. Finally, the Government argues that allowing the jury to have access to the Second Superseding Indictment is especially necessary given the complexity of this case: "By providing the trial jury with complete copies of the indictments, the jurors could fully understand the nature of the allegations, and could see for themselves that

---

[16]     The Government further observes as follows:

> Weigand's objections to the word "theft" are, if possible, even more unmoored from reason and common sense. Weigand is charged in Counts 10, 11, and 12 with a federal crime that expressly includes the word "theft" in its title: aggravated identity theft. Thus, if granted, the defendant's motion would actually prevent the government from articulating the name of three of the crimes on which the defendant will be tried.

*Id*.

the words forgery, embezzlement, and theft are used to describe Weigand's conduct and not to identify the crimes with which he is charged." *Id.* at 8.

### 2. Analysis

The Government has the stronger argument here. In the Court's view, it is not too much to ask of jurors to have them differentiate between words in the English language that have technical meanings, and the same or similar words when used (as they often are) in common parlance. What is more, as the Government points out, to the extent there is the possibility for jurors to be confused by use of non-technical terms that may also have technical meanings, the jurors will be instructed on the law by the Court. It is not unreasonable to assume that jurors will faithfully follow the law as charged—indeed, it is a foundational element of our legal system. Finally, Defendant provides next to no legal support for the relief it seeks; the two cases it does cite—*Russell v. United States*, 369 U.S. 749 (1962) and *Stirone v. United States*, 361 U.S. 212 (1960)—do not appear to have anything to do with Defendant's argument.

### 3. Conclusion

For the above reasons, both of Defendant's requests—to bar use of certain language at trial and to withhold the Second Superseding Indictment from the jury's consideration—are denied.

### E. Defendant's Motion to Compel

### 1. The arguments of the parties

The final motion addressed by this Opinion is a motion by Defendant to compel "the government to disclose the mechanics of the grand jury process for Indictment 20-CR-248 including whether any part of the grand jury proceedings resulting in Indictment 20-CR-248

was virtual." Defendant's Motion to Compel ("Def.'s Mot. 3"), ECF No. 87, at 3. Defendant's request is based on the belief that virtual grand jury proceedings are unconstitutional. *See id.*

The Government opposes the request on the basis of the long-standing rule that secrecy attaches to grand jury proceedings, as embodied in Federal Rule of Criminal Procedure 6(e). *See* Government's Opposition to Defendant's Motion to Compel ("Gov't. Opp'n. 3"), ECF No. 90. The Government argues that Defendant has not even come close to meeting his heavy burden in showing an exception to this rule. *See id.*

### 2.   *Legal framework*

"It is a well-settled policy that the proper functioning of the grand jury system requires secrecy of grand jury proceedings." *United States v. Slade*, No. CRIM.A. 12-0367, 2013 WL 3344341, at *2 (E.D. Pa. July 3, 2013) (citing *United States v. Smith,* 123 F.3d 140, 148 (3d Cir. 1997)). Rule 6(e) of the Federal Rules of Criminal Procedure is "intended to preserve the tradition of grand jury secrecy, creating a general rule of confidentiality for all matters occurring before the grand jury." *Smith,* 123 F.3d at 148. There are several exceptions to the general rule of secrecy, including Rule 6(e)(3)(E)(ii), which gives district courts the power to "authorize disclosure . . . of a grand-jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." "A defendant seeking disclosure of grand jury information under this section must show 'a particularized need for that information which outweighs the public interest in secrecy.'" *Slade*, 2013 WL 3344341, at *3 (quoting *United States v. McDowell,* 888 F.2d 285, 289 (3d Cir. 1989)).

### 3.    *Analysis*

Here, Defendant has not made the requisite showing; counsel's general suspicion that grand jury proceedings conducted remotely are unconstitutional, supported by a handful of non-binding, out-of-jurisdiction authorities, is not sufficient to invoke an exception to the general rule of secrecy.

### 4.    *Conclusion*

Defendant's motion to compel production of grand-jury related materials is, for the reasons set forth above, denied.

## IV.    CONCLUSION

The multiple pre-trial motions filed by the parties are granted and denied in accordance with the reasoning set forth above.  In particular, Defendant's motion to dismiss and/or strike is denied; the Government's motion *in limine* to admit evidence of Defendant's attempted witness tampering is granted; the Government's motion *in limine* to limit testimony by JH regarding his prior drug use is granted, in part, and denied, in part; Defendant's motion *in limine* to bar use of certain language at trial and to withhold the Second Superseding Indictment from the jury is denied; and Defendant's motion to compel is denied.

A separate Order follows this Opinion.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge