UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| UNITED STATES OF AMERICA, | : | |
|---|---|---|
| | : | |
| v. | : | Nos. 5:17-cr-00556 / 5:20-cr-00248 |
| | : | |
| JASON WEIGAND. | : | |

_____

## **O P I N I O N**
**Motion *in Limine* to Admit Telephone Recordings, ECF No. 84 in 17-556; ECF No. 10 in 20-248 - Granted**

**Joseph F. Leeson, Jr.**                                                  **September 23, 2021**
**United States District Judge**


## I.      INTRODUCTION

The above-captioned case involves two separate indictments against Jason Weigand

charging him with, among other things, bank and wire fraud.  The Government has filed a

Motion *in Limine* seeking a pretrial ruling on its request to admit nineteen recorded telephone

calls in which, according to the Government, Weigand assumed the identity of several of his

clients to further his scheme of converting or misapplying their investment funds.  The

Government argues that the calls are admissible as intrinsic evidence of the crimes Weigand is

charged with or under Rule 404(b) of the Federal Rules of Evidence to establish Weigand's

identity.  Weigand opposes the motion.  For the reasons below, the motion is granted.

## II.     BACKGROUND

On July 25, 2019, a grand jury returned a twenty-four count indictment against Weigand,

charging him with bank, mail, and wire fraud, as well as money laundering, aggravated identity

theft, and unauthorized access to a computer.  Sup. Ind., ECF No. 44 in 17-556.  On August 18,

2020, another grand jury returned a six-count indictment against Weigand, charging him with

mail fraud, wire fraud, and interstate transportation of stolen securities. Ind. ECF No. 1 in 20-248.

In sum, the indictments allege that Weigand was a licensed financial advisor who stole or misapplied several of his clients' funds. According to the Government, Weigand impersonated several of his clients while making telephone calls to various financial institutions to further his scheme. The Government filed a motion *in limine* with the Court, which requested to admit into evidence nineteen recorded telephone calls. Gov't Mot. ECF No. 84; ECF No. 10.[1] In that motion,[2] the Government argues that the calls are admissible as either intrinsic evidence or pursuant to Rule 404(b) of the Federal Rules of Evidence.

In response to the Government's motion, Weigand filed an opposition with the Court, in which he asserts several arguments against the calls' admissibility. *See generally* Def. Opp'n., ECF No. 91; ECF No. 17. Primarily he argues that the Government cannot authenticate the calls for a variety of reasons, such as the calls being inaudible and that some of the calls were made by a female. To better understand the issues, this Court issued an Order on April 15, 2021, directing the Government to file a reply addressing "any issues with respect to the chain of custody/authenticity" of the calls; any issues with respect to some of the calls being from an allegedly female caller; any issues with the quality of the calls; and what implications, if any, *United States v. Starks*, 515 F.2d 112 (3d Cir. 1975), has on the calls' admissibility "and whether a *Starks* hearing would be helpful to the Court." Order, ECF No. 104; ECF No. 31.

---

[1]      Because there are two separate dockets for this case, one for each indictment, this Opinion cites to both dockets throughout. The first ECF number is the case 17-556, and the second is for case 20-248.

[2]      The motion is identical in both cases.

In compliance with the Court's April 15 Order, the Government filed a reply memorandum.  Gov't Reply, ECF No. 106; ECF No. 32.  In that memorandum, the Government clarifies that its motion *in limine* regarding the calls "was not intended to address issues of authenticity or chain of custody." ECF No. 106; ECF No. 32.  It states that the motion's only purpose was to establish that the calls are admissible as intrinsic evidence or for purposes under Rule 404(b).  The Government also argues that the fact that some of the calls are purportedly from a female caller does not affect their authenticity.  It also asserts that *Starks* does not prevent the admission of the calls and to the extent that it does, it is no longer good law.  Finally, the Government recommended that this Court review the calls *in camera* to determine their audibility and that any other issues related to authenticity be reserved for trial so that witnesses needed for authentication and to testify before the jury need travel only once.  On June 3, 2021, the Court issued another Order directing Weigand to file a sur reply which, without waiving challenges to authenticity, addressed whether the calls are "admissible as intrinsic evidence and/or "other acts" evidence under Rule 404(b)." ECF No. 107; ECF No. 33.

In compliance with the Court's June 3 Order, Weigand filed a sur reply on June 9, 2021.  Def. Sur reply, ECF No. 108; ECF No. 34.  In that sur reply, he argues, among other things, that the calls are not intrinsic evidence or admissible under Rule 404(b).  On July 27, 2021, the Court issued a third Order, directing the Government to deliver the nineteen calls so that the Court could review them *in camera*.  ECF No. 112; ECF No. 38.  The Government delivered the calls to the Court for review on July 30, 2021, and the Court reviewed them *in camera*.

*The Calls*[3]

---

[3]     The Court briefly recites the calls for purposes of its analysis but notes that they have yet to be authenticated by the Government.

Call one is a recorded telephone call to Allianz Life Insurance Company of North America with a caller ID number ending in 8350 (the same caller ID in calls eleven, fifteen, sixteen, and seventeen).  The call was made in 2006, and the caller self identifies to the Allianz agent as "Jason."  The caller further self identifies by telling the agent the caller's Allianz ID number.  On this call, the caller requests information regarding accounts with Allianz and gives the agent a fax number for receipt of the requested information (the same fax number given in calls two, five, six, eight, ten, fourteen, and fifteen).

Call two is a recorded telephone call to Allianz.  The call was made in 2009, and the caller self identifies as "Jason."  The caller further self identifies to the agent by giving the caller's security number.  On this call, the caller requests information regarding accounts with Allianz and gives the agent the same fax number given in calls one, five, six, eight, ten, fourteen, and fifteen for receipt of the requested information.

Call three is a recorded telephone call to Allianz.  The call was made in 2009, and the caller self identifies as "Jason."  The caller also provides a social security number that is the same number given in call two.  Again, on this call, the caller requests information regarding accounts with Allianz and gives an email address, jasonweigand@comcast.net, for receipt of the requested information.

Call four is a recorded telephone call to Equitrust Life Insurance Company.  The call was made in 2011, and the caller self identifies as "Jason."  The caller also provides an Equitrust agent ID number and the same email address given in call three.  The subject matter of calls one through four is generally the same; the caller discusses the status of accounts at the financial institution and/or requests various documents.

Call five was made to Equitrust in 2012, and the caller purports to be one of Weigand's clients ("AR"). [4]  The caller also provides the same fax number given in calls one, two, six, eight, ten, fourteen, and fifteen.  The caller asks for info about the caller's account, such as the balance.

Call six was made to Equitrust in 2012, and the caller purports to be another one of Weigand's clients ("WK").  On this call, the caller asks for the value of the caller's account and provides an email address, quofacto@yahoo.com, for receipt of the requested information.

Call seven was made to Equitrust in 2012, and the caller purports to be AR.  The caller also provides the same fax number given in calls one, two, five, eight, ten, fourteen, and fifteen.  On this call, the caller asks for the balance of the caller's account.

Call eight was made to Equitrust in 2012, and the caller purports to be AR.  The caller also provides the same fax number given in calls one, two, five, seven, ten, fourteen, and fifteen.  On this call, the caller asks about withdrawals made from the caller's account.

Call nine was made to Charles Schwab & Co., Inc. in 2012, and the caller purports to be AR.  On this call, the caller discusses various details about the caller's account.

Call ten was made to Equitrust in 2012, and the caller purports to be AR.  The caller also provides the same fax number given in calls one, two, five, seven, eight, fourteen, and fifteen.

Call eleven was made to Schwab in 2012, and the caller purports to be AR.  The call has the same caller ID number as calls one, fifteen, sixteen, and seventeen.  On this call, the caller asks about adding extra security to the caller's account.

Call twelve was made to Schwab in 2012, and the caller purports to be AR.  On this call, the caller discusses submitting different documents to verify the caller's account.

---

[4]     The Court uses the victims' initials throughout this Opinion to protect their privacy.

Call thirteen was made to Equitrust in 2012, and the caller purports to be AR.  On this call, the caller asks about additional security steps and requests verification for the last time the caller telephoned in because of an apparent breach to the caller's email account.

Call fourteen was made to Equitrust in 2013, and the caller purports to be WK.  The caller also provides the same fax number given in calls one, two, five, seven, eight, ten, and fifteen.

Call fifteen was made to Allianz in 2013, and the caller purports to be another of Weigand's clients ("WP").  The call has the same caller ID number as calls one, eleven, sixteen, and seventeen.  The caller also provides the same fax number given in calls one, two, five, seven, eight, ten, and fourteen.  On this call, the caller asks about sending documents to the caller's work address instead of the caller's home because the caller is currently separating from the caller's wife and provides an address in King of Prussia, Pennsylvania.

Call sixteen was made to Allianz in 2013, and the caller purports to be WP.  The call has the same caller ID number as calls one, eleven, fifteen, and seventeen.  On this call, the caller discusses closing the caller's account.

Call seventeen was made to Allianz in 2013, and the caller purports to be WP.  The call has the same caller ID number as calls one, eleven, fifteen, and sixteen.  On this call, the caller inquires about a check asked to be sent to the caller's work address in call sixteen.  After learning that the check was sent to the home address on Allianz's file, the caller asks whether the check can be diverted to the caller's work address instead.

Call eighteen was made to Allianz in 2014, and the caller purports to be yet another of Weigand's clients ("JH").  The caller also provides the following email: quofacto@comcast.com.

On this call, the caller explains that the caller is currently separating from his wife and asks for information on his account.

Call nineteen was made to Allianz a few minutes after call eighteen, and the caller again purports to be JH.  The caller explains that he provided the wrong email address in the prior call and gives a corrected email address, the same quofacto@yahoo.com email address given in call six.

## III.     Rule 404(b) and Intrinsic Evidence – Review of Applicable Law

Normally, "[e]vidence of any other crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  In other words, evidence is not admissible to prove that a defendant has a propensity to behave a certain way or to commit the charged crime. However, under Rule 404(b), evidence of other acts is admissible for any non-propensity reason. For example, evidence of other acts may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  "To be admissible under Rule 404(b), evidence of uncharged crimes or wrongs must (1) have a proper evidentiary purpose; (2) be relevant;[5] (3) satisfy Rule 403;[6] and (4) be

---

[5]     Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "is of consequence in determining the action."  Fed. R. Evid. 401.  "This definition is very broad."  *Green*, 617 F.3d at 251 (internal quotations omitted). "Relevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court."  Fed. R. Evid. 402.

[6]     Rule 403 of the Federal Rules of Evidence provides: "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  "Rule 403 mandates a balancing test, 'requiring sensitivity on the part of the trial court to the subtleties of the particular situation.'"  *United States v. Cunningham*, 694 F.3d 372, 391 (3d Cir. 2012) (quoting *United States v. Vosburgh*, 602 F.3d 512, 537 (3d Cir. 2010)).  It is not enough that the evidence be prejudicial because

accompanied by a limiting instruction (where requested) about the purpose for which the jury may consider it." *United States v. Green*, 617 F. 3d 233, 249 (3d Cir. 2010). "A proper purpose is one that is 'probative of a material issue other than character.'" *Id.* at 250 (quoting *Huddleston v. United States*, 485 U.S. 681, 686 (1988)). "[T]he party seeking to admit evidence under Rule 404(b)[] bears the burden of demonstrating its applicability [and] identifying a proper purpose." *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014). If a party seeks to admit evidence for any purpose other than to prove propensity, the Third Circuit generally favors admission. *See United States v. Givan,* 320 F. 3d 452, 460 (3d Cir. 2003) ("We have recognized that Rule 404(b) is a rule of inclusion rather than exclusion.").

However, Rule 404(b) "does not apply to uncharged offenses committed by a defendant when those acts are intrinsic to the proof of the charged offense." *United States v. Gibbs*, 190 F. 3d 188, 217 (3d Cir. 1999). In the Third Circuit, there are two types of intrinsic evidence. *See Green*, 617 F. 3d 233, 248. "First, evidence is intrinsic if it directly proves the charged offense." *Id*. (internal quotations and citation omitted). Second, evidence of uncharged acts is intrinsic if they were "performed contemporaneously with the charged crime" and "if they facilitate the commission of the charged crime." *See Id*. (internal quotations and citation omitted). Thus, intrinsic evidence is admissible so long as it is not inadmissible under another rule.

## IV.    DISCUSSION[7]

---

"[v]irtually all evidence is prejudicial or it isn't material." *United States v. Maurizio*, No. 3:14-23, 2015 U.S. Dist. LEXIS 118516, at *25 (W.D. Pa. Sep. 4, 2015) (internal quotations omitted). Rather, the probative value of the evidence must be "substantially outweighed" by the danger of "unfair prejudice." *See* Fed. R. Evid. 403.

[7]     Any admissibility rulings discussed in this Opinion are conditioned on the Government first laying a proper foundation for the calls' admission at trial, which includes establishing the calls' authenticity. Since the Court reserves its ruling on the calls' authenticity for trial, arguments against admitting the calls for issues related to authentication are not addressed in this Opinion.

### A.      The calls are audible.

As an initial matter, to be admitted into evidence, recordings must be audible.  This is not a high standard.  "Recordings are admissible unless the unintelligible portions are so substantial as to render the recordings as whole untrustworthy."  *United States v. DiSalvo*, 34 F. 3d 1204, 1221 (3d Cir. 1994) (internal quotations and citation omitted).  Weigand contends that the calls are inadmissible because of their poor quality.  He argues that the recordings are muddled in places and difficult to understand.  Def. Opp'n. at 5.  The Court disagrees.  The Court has listened to all nineteen calls *in camera*, and it finds that they are completely audible.  There are occasions in some calls where individuals speak over one another, but this does not render the calls so unintelligible that they are untrustworthy as a whole.  Indeed, the audio in the calls can be heard clearly almost the entire time.[8]  For this reason, the Court rejects Weigand's argument that the calls are inaudible.

### B.      Calls eight through twelve and fifteen through seventeen are admissible as intrinsic evidence.

In its motion *in limine*, the Government asserts that calls five, seven through eleven, and fourteen through seventeen are admissible as intrinsic evidence.  *See generally* Gov't Mot. Weigand opposes.  The Court analyzes each call, briefly, in turn.

The Government asserts that calls five and seven are intrinsic evidence of count one under the Superseding Indictment—bank fraud.[9]  Gov't Mot. 12.  However, the Government has

---

[8]      The only exception to this is approximately two minutes at the end of call twelve, which is entirely inaudible.  But the Government does not plan on playing this portion of the call, and the remainder of the call is sufficiently audible.

[9]      The elements of bank fraud are "(1) to defraud a financial institution; or (2) to obtain any of the moneys . . . or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C.A. § 1344.

failed to show that calls five and seven are intrinsic evidence of count one because the charged crime took place in 2006–07.  Calls five and seven took place years later in 2012.  Thus, calls five and seven are not intrinsic evidence of count one because they neither "directly prove[] the charged offense," nor were they "performed contemporaneously with the charged crime."  *See Green*, 617 F. 3d at 248.

The Government next asserts that calls eight through twelve and fourteen are intrinsic evidence of counts one, five, and six under the Superseding Indictment—respectively, two counts of bank fraud, and one count of wire fraud.[10]  Regarding calls nine and eleven, Weigand argues that they are not intrinsic evidence of at least one of the charged crimes—wire fraud— because the calls do not help to prove any of the necessary elements of the charged crime.  But this addresses only one type of intrinsic evidence.  The second type of intrinsic evidence requires only that the proposed evidence occurred contemporaneously with the charged crimes and facilitated the charged crimes.  *See Green*, 617 F. 3d 233, 248.  Here, while calls eight through twelve may not each directly prove one of the elements of wire fraud, they each occurred contemporaneously with the charged crimes and, according to the Government's theory, facilitated the charged crimes because they allowed Weigand to maintain control over his client's financial accounts and keep them in the dark as to what he was doing.  Thus, the Court agrees with the Government that calls eight through twelve are intrinsic evidence.  However, call fourteen, which took place one year after the charged crimes, is not intrinsic evidence because it does not directly prove the charged crimes, nor did it take place contemporaneously with, or facilitate the charged crimes.

---

[10]     The elements of wire fraud are (1) a scheme to defraud; and (2) a wiring in interstate or foreign commerce in furtherance of the scheme to defraud.  *See* 18 U.S.C.A. § 1343.

Finally, the Government asserts that calls fifteen through seventeen are intrinsic evidence of count twenty-one of the Superseding Indictment—bank fraud.  The Court agrees because the calls happened contemporaneously with the charged crimes and, according to the Government, facilitated the charged crime.  Regarding calls fifteen through seventeen, Weigand argues that even if the calls are intrinsic evidence, they are inadmissible under Rule 403 because the limiting instruction given to the jury that it may only consider the calls for certain purposes would be too complex.  Def. Sur-Reply at 4–5.  No such instruction will be necessary because they are admissible as intrinsic evidence, not simply under Rule 404(b).  This type of instruction is commonplace so it is unlikely that any such instruction given would cause confusion.

In sum, calls eight through twelve and fifteen through seventeen are admissible as intrinsic evidence because they either directly prove the charged crimes or because they occurred contemporaneously with the charged crimes and facilitated the commission of the charged crimes by keeping Weigand's scheme afloat.

### C.      The remaining calls are admissible under Rule 404(b).

The Government next asserts that all nineteen calls are admissible under Rule 404(b) if not admissible as intrinsic evidence.  *See generally* Gov. Mot.  The first step in analyzing the remaining calls' admissibility under Rule 404(b) is to determine whether they are being admitted for a proper purpose.  The Government asserts that the calls will be introduced to establish Weigand's identity.  Specifically, the Government argues that the caller ID, fax number, and email addresses, which reoccur across multiple calls, tends to prove that Weigand is the one true caller assuming his clients' identities.  The Government also asserts that it will introduce additional evidence tying Weigand to other identifying information provided in the calls, including the King of Prussia address given in call fifteen and the quofacto@yahoo.com email

address given in calls six, eighteen, and nineteen, further establishing that Weigand is the one true caller.  Lastly, the Government argues that the calls will help the jury identify Weigand as the caller by comparing the voice from calls one through four (where the caller identifies as "Jason") with the voices from the other calls.  Depending on the call, Weigand makes various arguments against their admissibility under Rule 404(b).

Regarding calls one through four and fourteen, Weigand argues that they do not meet the definition of "other acts" under Rule 404(b) because they are not "uncharged misconduct."  Def. Sur Reply at 5, 7.  However, the test under Rule 404(b) does not require that the evidence admitted be evidence of uncharged misconduct.  In other words, the other acts do not need to be nefarious ones.  The Rule simply states that evidence of "other acts" is permissible to prove things other than propensity, such as identity.  *See* Fed. R. Evid. 404(b).  Thus, evidence of acts, whether they be innocent or uncharged misconduct, are admissible for permitted purposes under Rule 404(b).

Weigand makes a related argument regarding call thirteen (where the caller purports to be AR and asks about adding extra security in light of a recent email breach).  Specifically, he argues that this call does not qualify as an "other act" under Rule 404(b) because he is also being charged with illegally accessing another's computer and the call discusses the act of hacking into AR's email account and is therefore not an "other [act] than those at issue in the case."  *See* Def. Sur Reply at 9.  Similar to the prior argument, Weigand does not support this contention with any case law or other authority.  Again, it is not a requirement under Rule 404(b) that the other act evidence cannot relate to other charges at issue in the same case; the main requirement is simply that it be admitted to show something other than propensity.  *See United States v. Repak*,

852 F. 3d 230, 242 (3d Cir. 2017) (explaining that "[t]he plain text of Rule 404(b) allows for the admission of other-acts" for non-propensity purposes).

The Court agrees with the Government that admitting all nineteen calls in order to establish Weigand's identity as the one true caller is a proper purpose under Rule 404(b) because the calls will allow the jury to compare the voice heard during calls one through four, where Weigand identifies as himself, with the other calls in which the caller purports to be different clients of Wiegand's who, depending on the call, provide consistent identifying information, such as a matching fax number. Most importantly, the "evidence fits into a chain of logical inferences," which tends to prove the Government's theory of the case, and it does not require "the inference that because the defendant [made the calls], he therefore is more likely to have committed the charged offense." *See United States v. Brown*, 765 F. 3d 278, 292–93 (3d Cir. 2014) (internal quotation marks and citation omitted).

Having found that the calls are being offered for a proper purpose under Rule 404(b), the next step is to determine their relevancy. Weigand denies that he is the caller and denies that he committed the charged crimes; thus, all nineteen calls are relevant because they tend to prove the Government's theory that Weigand is the one true caller and that he committed the charged crimes by exercising control over his clients' investments and financial accounts through deceit. Calls one through four will be used to identify Weigand and give the jury a voice to compare to the other calls. Then, depending on the call, the jury can infer from other identifying information provided in the calls, coupled with additional evidence presented from the Government tying the identifying information to Weigand, that Weigand is the one true caller. Therefore, the calls are

relevant for the purpose of establishing Weigand's identity and proving the Government's theory in general.[11]

The final step of the analysis is to determine whether the calls pass Rule 403's balancing test for admissibility.  Weigand contends that the calls fail this test for four reasons.

First, he argues that the calls create a danger of confusing the issues because they divert the jury's attention to an alleged, unrelated illegality.  Def. Opp'n at 6.  The Court disagrees for several reasons; as stated above, under the Government's theory, the calls tend to show how Weigand committed the charged offenses, and no other criminal activity takes place during the calls.  Thus, their admission does not overly highlight any other unrelated illegality.  Furthermore, the calls are highly probative of establishing Weigand as the true caller in all nineteen calls, so, to be excluded, the danger of confusion would have to be substantial, which it is not.

Second, he argues that the calls should be excluded because they are cumulative.  *Id*.  But he does not elaborate on what makes the calls cumulative, nor does he point to less prejudicial evidence that could be admitted in lieu of the calls.  Thus, the Court is not persuaded by this argument.

Third, he cites to *United States v. Dowling,* 855 F. 2d 122 (3d Cir. 1988), to support his assertion that the calls are not admissible under Rule 404(b) because they are not similar enough to the crimes he is charged with.  *Id*.  This is simply a misapplication of case law.  In *Dowling*, the defendant had been charged with bank robbery.  *Id*. at 116.  In order to establish the defendant's identity, the government sought to introduce evidence of a prior robbery, of which the defendant had been acquitted.  *Id*. at 120–21.  The *Dowling* court held that evidence of the

---

[11]     The Court notes that Weigand does not contest the calls' relevancy.

prior robbery was inadmissible because the jury could not conclude that the defendant was indeed the actor in the prior robbery because he had been acquitted. *Id*. at 122. Thus, *Dowling* deals with issues not present in this case, such as whether evidence of other acts is admissible when a defendant has been acquitted of charges related to those acts. Weigand also cites *United States v. Neary*, 733 F. 2d 210 (2d Cir 1984) to support this argument.[12] *Neary* is not precedent that this Court must follow. Even if it were, Weigand again misapplies the case law. In *Neary*, the Government sought to introduce evidence of prior bad acts to prove identity through establishing "a common plan or design." *Id*. at 216. Here, the Government does not seek to establish identity through a common plan or design. Thus, the case law cited by Weigand is not on point.

Fourth, Weigand argues that the calls are more prejudicial than they are probative. Def. Sur reply at 4, 6, 7. He does not elaborate further on what makes the calls prejudicial other than that their admission could harm his case. Rule 403 only prohibits evidence if its probative value is "substantially outweighed" by "unfair prejudice." *See* Fed. R. Evid. 403. "Evidence is unfairly prejudicial if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise may cause a jury to base its decision on something other than the established propositions in the case." *United States v. Schneider*, 817 F. Supp. 2d 586, 606 (E.D. Pa. 2011) (internal quotation marks and citation omitted). The content of the calls is not something that arouses sympathies or emotions of any kind. Indeed, the calls are rather dry; for the most part, the speakers recorded in the calls discuss general information about financial accounts and various forms related to those accounts. As the Government points out, there is nothing particularly incriminating stated in the calls. It does not mean that the calls are unfairly

---

[12]     Weigand incorrectly cited *Neary* as coming from the Third Circuit.

prejudicial just because they may cause "damage to [Weigand's] cause; if it did, most relevant evidence would be deemed prejudicial." *See GN Netcom, Inc. v. Plantronics, Inc.*, 930 F. 3d 76, 88 (3d Cir. 2019). Thus, the Court rejects Weigand's argument that the calls are unfairly prejudicial.

Next, Weigand argues that "the jury does not have the basis of knowledge to identify voices." Def. Opp'n. at 3. Again, assuming the Government properly authenticates the calls, it is up to the jury whether it believes the voice in the calls belongs to Weigand and how much weight, if any, to give the calls. *See United States v. Vento*, 533 F. 2d 838, 865 (3d Cir. 1976) (stating, "we believe that the questions of weight and sufficiency of the evidence relating to the identification of [defendant's] voice were matters for the jury"). Indeed, "[i]t is permissible to base the identification of a voice heard in intercepted conversations on relatively few conversations between an agent and the accused person . . . [i]n fact, it is not necessary to present direct evidence to identify the intercepted voice. Circumstantial evidence has often been employed to identify callers on tapped lines." *See id*.

Lastly, Weigand takes issue with the "meandering procedure of identification and linkage in order to make" the alleged connection that Weigand is the caller in all nineteen calls. Def. Opp'n. at 4. The Court disagrees. Most of the connectors between the calls do not require more than one or two inferences. For example, in calls one, two, five, seven, eight, ten, fourteen, and fifteen, the caller purports to be different people but gives the same fax number in each call; the inference that the callers are actually the same caller based on the matching fax number does not require much mental meandering.

In sum, the Court finds that all nineteen calls are being offered for a proper purpose under Rule 404(b)—to prove identity. In addition, the Court finds that the calls are relevant because

they tend to prove the Government's theory of the case.  The calls pass Rule 403's balancing test because their probative value is not outweighed substantially by unfair prejudice.  Thus, all the calls, including the calls that are not intrinsic evidence, are admissible under Rule 404(b). Weigand may request that a limiting instruction be given in tandem with any admitted calls that are not also admissible as intrinsic evidence.  *See United States v. Moffitt*, 601 F. App'x 152, 155 (3d Cir. 2015) (concluding that the district court's limiting instruction at the close of the case that the jury was to consider the evidence of the defendant's prior convictions for a certain specified purpose was sufficient under Rule 404).

## V.    CONCLUSION

The Government's Motion in Limine is granted.  Specifically, calls eight through twelve and fifteen through seventeen are admissible as intrinsic evidence because they either directly prove the charged crimes, or they occurred contemporaneously with the charged crimes and, under the Government's theory, helped to facilitate the commission of the charged crimes.  Calls one through seven, thirteen, fourteen, eighteen, and nineteen are admissible for a proper purpose under Rule 404(b) and, if requested, will be accompanied with a limiting instruction.

All counsel are advised that the admissibility rulings made herein are conditioned on the Government first laying a proper foundation for the evidence's admission at trial.

A separate order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge